UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

RICHARD J. ALLEN

CRIMINAL ACTION

NO. 10-163-JJB

## RULING ON DEFENDANT'S MOTION TO SUPPRESS

Before the Court is a motion to suppress (Doc. 19) evidence the government obtained from defendant Richard Allen ("Allen") on July 1, 2010, the day law enforcement arrested Allen for attempted possession with intent to distribute methamphetamine ("meth") in violation of 21 U.S.C. § 846. The government filed an opposition. (Doc. 21). The Court held a suppression hearing on December 7, 2011, (Transcript, Doc. 33), and the parties filed post-hearing briefs (Docs. 34, 35). The matter was submitted on February 29, 2012.

I.

The testimony of Sergeant Will Reames and Detective Clint Doe of the Ascension Parish Sheriff's Office established the following facts.

On July 1, 2010, an individual named Larry Sharper was arrested for, *inter alia*, possession of meth, and he began cooperating with the Ascension Parish Sheriff's Office in their investigation of meth transactions. After being taken into custody, Sharper received a call from an individual identified as Jonathan Leggion, the dealer from whom Sharper had received the meth. Sgt. Reames knew Leggion because he had previously arrested him on a meth charge. While listening to Sharper's conversation with Leggion, which occurred around 8:30 p.m., Reames heard Leggion

1

claim an unnamed person would be arriving at a gas station on the corner of Highway 44 and U.S. Highway 61 in a blue truck to buy an ounce and a half of meth from him. Leggion directed Sharper to meet the driver of the blue truck at the appointed place to sell him an ounce and a half of meth for $1400. Sharper was then to deliver the money to Leggion in Alexandria so he could purchase more meth.

As the three officers arrived at the scene of the arranged deal at some point between 10:00 p.m. and 10:45 p.m., they observed the defendant, Richard Allen, pull into the parking lot of the gas station but then proceed to the parking lot of the pharmacy located next to the gas station. The officers observed Allen emerge from the truck to stand at its tailgate. They recognized Allen from previous meth investigations, including a previous search of Allen's home. Upon recognizance, Sgt. Reames immediately directed two other officers to arrest Allen. They found approximately $1400 in his right pants pocket and another $491 in his left pocket. Following his arrest just before midnight, Allen was brought to the police station, informed of his *Miranda* rights, and proceeded to tell the police his meth source was Leggion.

II.

Allen argues that his post-arrest statements and the money seized from his person are inadmissible as fruit of an unlawful arrest, claiming that the information Leggion provided to officers, through their interaction with Sharper, makes him an anonymous informant whose tip was not corroborated prior to the arrest. Thus, Allen argues his arrest was not based on probable cause and therefore violated the Constitution, requiring suppression of his post-arrest statements and the money seized from his person from the search incident to arrest.

In support, defendant claims the officers knew the truck he was driving was not blue, as the information from Sharper and Leggion made clear, but was in fact gray. He therefore argues the officers based their probable cause solely on defendant's criminal history involving meth, which he submits does not rise to the level of probable cause.

III.

Warrantless arrests must be based upon probable cause. *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Id.* (citations and quotations omitted). The police officer's knowledge must establish only a "fair probability that a crime occurred." *United States v. Nunez-Sanchez*, 478 F.3d 663, 666-67 (5th Cir. 2007) (citation and quotation omitted). Because the probable cause requirement does "not demand any showing that such a belief is correct or more likely true than false," *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion of Rehnquist, C.J.)), an officer must rely on "something more than a bare suspicion, but need not reach the fifty percent mark." *Nunez-Sanchez*, 478 F.3d at 667 (citation and quotation omitted). When considering what a reasonable person would have concluded, courts take into account the expertise and experience of law enforcement officials. *Id.* (citation and quotations omitted).

Officers "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably

3

corroborated by other matters within the officer's knowledge." *Jones v. United States*, 362 U.S. 257, 269 (1960). Whereas known informants can have their reputations assessed and can be held responsible if their information turns out to be unreliable, anonymous tips alone seldom demonstrate the informant's basis of knowledge or veracity. *Florida v. J.L.*, 529 U.S. 266, 270 (2000). However, "independent police work can corroborate details in an informant's tip." *United States v. Roch*, 5 F.3d 894, 898 (5th Cir. 1993).

On motions to suppress, the United States bears the burden of proving by a preponderance of the evidence that law enforcement agents possessed probable cause to arrest the defendant. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

IV.

The testimony of the officers and the police report submitted by Sgt. Reames shows that the information they received from Sharper, through his call from Leggion, made clear that the color of the truck the unnamed meth purchaser would be driving was blue. (*See* Reames Testimony, Doc. 33, pp. 20, 22). At certain points in his testimony, Reames attempted to backpedal the language in his report a bit by stating the tip suggested a "bluish" truck. (*Id.*, pp. 14, 20, 22). At some times, both Sgt. Reames and Det. Boe testified to seeing a "bluish grey" truck (Reames Testimony, Doc. 33, p. 41; Boe Testimony, Doc. 33, p. 44, 54); at other times, they insist the truck was the color of paint primer.[1] (Reames Testimony, Doc. 33, p. 20; Boe Testimony, Doc. 33, p. 54). From the exhibits admitted into evidence at the hearing depicting the truck's

---

[1] This characterization is particularly unhelpful because paint primer comes in many shades, including off white, gray, etc.

4

color, (*see* Doc. 28, Exs. D-5, D-7 & D-9), the Court's independent evaluation finds the truck to be light grey. Indeed, Sgt. Reames submitted an official inventory log describing the truck as "grey." (Doc. 28, Ex. D-2).

Allen also argues the officers based their probable cause simply off his past involvement with meth investigations. Both officers appear to concede that they were not prepared to arrest the driver of the truck in question until they saw Allen emerge from the vehicle. (*Id.*, pp. 18-19, 24-25, 38; Boe Testimony, Doc. 33, pp. 51-53). Both officers were familiar with Allen from prior meth investigations, including a search of his home. They recognized Allen despite the late hour of the encounter because the area was well lit. (Reames Testimony, Doc. 33, p. 15; Boe Testimony, Doc. 33, p. 44).

The government relies on *United States v. McSween*, 53 F.3d 684, 689 (5th Cir. 1993), as justification for the officers' use of the defendant's past drug investigations to augment their suspicions. In *McSween*, officers received consent to search the car of a man pulled over for speeding. *Id.* at 685. While the search was being conducted, another officer's computer search of the man revealed four prior arrests on narcotics charges. *Id.* The Fifth Circuit found that knowledge of the four prior arrests, when coupled with the smell of marijuana in the car's interior and the finding of a plastic bag hidden behind a rag in the firewall of a new rental car which felt like it contained marijuana, gave the officers probable cause to arrest the driver. *Id.* at 689.

The Court does not view the decision in *McSween* as a blanket license to arrest someone based solely on their past criminality. The officers in this case had previously conducted at least one search of Allen's home for meth, but neither officer knew whether Allen had been charged or convicted based on any of their past investigations.

5

(Reames Testimony, Doc. 33, pp. 18-19, 25-26, 37-39; Boe Testimony, Doc. 33, pp. 44-45, 52-53). While officers understandably take into account common sense experience, including past involvement with particular persons, they cannot use a person's past history alone to justify an arrest.

Taken together, the questionable color of Allen's truck, combined with the apparent willingness of the officers to arrest him based primarily on his past involvement with meth investigations, makes the officers' arrest unlawful. When the officers arrived at the scene, they saw nothing more than a pickup truck exiting the gas station and pulling into the pharmacy. While the vehicle type matched their description, the pictures of the truck show the truck was not blue, the color the informant indicated. Both officers testified that they were not prepared to zero in on that vehicle until they saw the identity of the driver. The Court certainly understands the officers taking their personal knowledge of past investigations into account in assessing whether the question Allen. However, because the truck was not a blue truck, the fact that Allen was at the scene of the suspected meth deal did not on its own provide them with probable cause to arrest him for attempted possession with intent to distribute meth.

The fact that a grey truck had pulled from the gas station into the pharmacy gave them little reason, standing alone, to suspect the driver of that truck. After all, the officers did not arrive at the scene of the alleged drug deal until 2-3 hours after Leggion ordered Sharper to make the transaction, which should have tempered a reasonable officer's expectation that their target would even still be there. And the mere fact that Allen, a "known" meth user and/or trafficker, was at the scene could not by itself reasonably establish to a fair probability that he intended to make the meth deal.

Together, the fact that Allen was driving a truck at the scene certainly provided the officers with reasonable suspicion to continue their investigation of him, based on the partially corroborated information provided by Sharper. But the officers' suspicions never ripened into probable cause; instead, they rather casually arrived on the scene, saw Allen in the area, and concluded he was their man. Their efforts showed no detectable sign of bad faith, but on these facts, their investigation fell short of the probable cause standard the Fourth Amendment requires.[2]

V.

Accordingly, defendant Richard Allen's motion to suppress (Doc. 19) is hereby GRANTED.

Signed in Baton Rouge, Louisiana, on March 12, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[2] Because the monetary seizure and Allen's post-arrest statements arrived on the heels of the illegal arrest, no attenuation analysis is needed. Moreover, the government made no argument on this point.